FILED
2014 Jun-19 PM 04:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BRUCE JEFFREY COOPERMAN,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| vs. ) | Case No.  2:13-cv-00262-JHE |
| ) | |
| **CAROLYN W. COLVIN,**[1] ) | |
| **Acting Commissioner of** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant** ) | |

## MEMORANDUM OPINION

Plaintiff Bruce Jeffrey Cooperman ("Cooperman") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB").  Cooperman timely pursued and exhausted his administrative remedies.  The case is therefore ripe for review

---

[1] Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013.  *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on December 17, 2013).  Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin in the case caption above.

under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the decision of the Commissioner is AFFIRMED.[2]

## I. Factual and Procedural History

Cooperman was a 61-year-old male at the time of the Administrative Law Judge ("ALJ") decision. (Tr. 27, 119). Cooperman has a high school education and previously worked as a sales representative. (Tr. 26-27).

Cooperman filed his application for a period of disability and DIB on June 10, 2010, alleging an initial onset date of March 2, 2009. (Tr. 19, 119). The Commissioner denied Cooperman's application (Tr. 65-69), and Cooperman requested a hearing before an ALJ. (Tr. 74-75). After a hearing, the ALJ denied Cooperman's claim on September 9, 2011. (Tr. 16-31). Cooperman sought review by the Appeals Council, but it declined his request on December 6, 2012. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On February 6, 2013, Cooperman initiated this action. (*See* Doc. 1).

---

[2] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 9).

## II. Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide

---

[3] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2013.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i–v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Cooperman met the insured status requirements of the Social Security Act through December 31, 2014, and that Cooperman engaged in substantial gainful activity from July 2011 to the date of the decision; however, he found there had been a continuous twelve-month period(s) during which Cooperman did not engage in substantial gainful activity and based his remaining findings on those periods. (Tr. 21). At Step Two, the ALJ found Cooperman has the following severe impairments: migraines, disorders of the neck and back, numbness of arms, right shoulder pain, osteoarthritis, aortic regurgitation, and history of depression. (*Id.*). At Step Three, the ALJ found Cooperman does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22-23).

Before proceeding to Step Four, the ALJ determined Cooperman's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Cooperman has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) that allows for moderate pain with a moderate effect on his ability to concentrate, moderate

depression with a moderate effect on his ability to concentrate, and moderate numbness in his upper extremities. (Tr. 23-26). At Step Four, the ALJ determined Cooperman could perform his past relevant work as a sales representative as it did not require the performance of work-related activities precluded by his RFC. (Tr. 26). Therefore, the ALJ determined Cooperman has not been under a disability and denied his claim. (Tr. 27).

## V. Analysis

### A.  Introduction

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Cooperman contends the ALJ's RFC findings do not comply with Social Securing Ruling ("SSR") 96-8 requiring a function-by-function analysis of work-related activities .(*Id.* at 8). Additionally, Cooperman contends the ALJ did not make

a proper mental RFC finding and improperly placed the burden on the vocational expert to interpret the degree of restriction. (*Id.* at 7-8). Despite Cooperman's arguments to the contrary, substantial evidence supports the ALJ's determination Cooperman failed to demonstrate a disability and the ALJ applied the proper legal standards.

**B.  The ALJ Complied with SSR 96-8p by Considering the Relevant Evidence and Finding Cooperman Could Perform Work at the Light Exertion Level**

When determining whether Cooperman is disabled, the ALJ applied the five-step sequential evaluation process found at 20 C.F.R. § 404.1520(a)(4). (Tr. 19-21). The ALJ determined Cooperman's RFC at step four and properly found he could perform a reduced range of light work. (Tr. 23); *see* 20 C.F.R. § 404.1520(a)(4)(iv).[5] Cooperman, citing SSR96-8p, 61 Fed. Reg. 34474 (1996), contends the ALJ erred by not performing a function-by-function analysis to determine Cooperman's ability to perform the exertional strength demands of lifting, carrying, sitting, standing, walking, pushing, and pulling, when determining Cooperman's RFC. (Doc. 12 at

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

8-9). SSR 96-8p states that "the RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities or a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work. . . ."

Following this command, the ALJ discussed relevant evidence in accordance with SSR 96-8p and properly found Cooperman could perform work at the light exertional level. (Tr. 23). Thus, the ALJ found Cooperman could lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. *See* 20 C.F.R. § 404.1567(b).

Accordingly, the ALJ implicitly found Cooperman could also perform work at the sedentary level.[6] *See* 20 C.F.R. § 404.1567(b) (If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."). Further, in finding Cooperman could perform light work, the ALJ also found Cooperman could stand/walk six hours in an eight-hour day and could sit six hours in an eight-hour day. *See* 20 C.F.R. § 404.1567(a)-(b) (discussing sitting, standing,

---

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

and walking requirements of sedentary and light work); SSR 83-10, 1983 WL 31251, *5-6 (1983) (same). Thus, the ALJ's RFC finding addressed the exertional functions contemplated by SSR 96-8p.

Given the definitions of light and sedentary work in the Regulations and SSR 83-10, in addition to the ALJ's discussion of the record, the ALJ was not required to specifically discuss Cooperman's ability to perform such exertional demands associated with light work. The Eleventh Circuit has explained:

> We do not require the ALJ to "specifically refer to every piece of evidence in his decision," so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir.2005) (*per curiam*). The ALJ found that the medium level work determination was consistent with the medical evidence and found Castel's RFC to be at a medium level of work. The ALJ performed a proper RFC function analysis, based on substantial evidence, and we shall defer to his conclusions.

*Castel v. Comm'r of Social Sec.*, No. 09-12269, 2009 WL 4250063, at *3 (11th Cir. Nov. 30, 2009); *see also Carson v. Comm'r*, No. 11-11394, 2011 WL 4375018, *1 (11th Cir. Sept. 21, 2011) (finding the ALJ's discussion of the medical record and testimony followed by a limitation to light work a sufficient function-by-function analysis despite not specifically referring to the claimant's ability to work or stand); *Freeman v. Barnhart*, No. 06-15604, 2007 WL 861140, *2 (11th Cir. Mar. 23, 2007)

(even though the ALJ "could have been more specific and explicit in his findings" with respect to the claimant's functional limitations and work-related abilities on a function-by-function basis, he complied with SSR 96-8p because "he did consider all of the evidence"); *Knox v. Astrue*, No. 08-3389, 2009 WL 1747901, at *5 (7th Cir. June 19, 2009) (an ALJ satisfied the function-by-function discussion requirement by analyzing objective medical evidence, the claimant's testimony and credibility, and the other evidence.).

  Here, the ALJ satisfied the specificity obligation of SSR 96-8p by discussing Cooperman's impairments and thereafter expressing his RFC in terms of exertional levels such as sedentary, light, medium, or heavy work. The ALJ further stated he considered all the evidence, which is confirmed by his thorough discussion of the record. (Tr. 19-23). Furthermore, remand to have the ALJ simply restate or further describe Cooperman's ability to perform strength demands of light work would serve no practical purpose, would not alter the ALJ's findings, and would be a waste of judicial and administrative resources. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (no principle of administrative law or common sense requires the Commissioner to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result).

**C.   The ALJ Made Proper Findings Related to Cooperman's Mental RFC and Properly Questioned the Vocational Expert (VE)**

Cooperman contends the ALJ improperly asked the VE to assume his depression had a moderate affect on his ability to concentrate. (Doc. 12 at 7-8). This contention is without merit. At steps two and three of the five-step sequential evaluation process, the ALJ evaluates the severity of a claimant's mental impairment using the psychiatric review technique (PRT). *See* 20 C.F.R. § 404.1520a. Under the PRT, the ALJ uses a four-point scale to rate a claimant's degree of functional limitations in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See id.*; 20 C.F.R. § pt. 404, subpt. P, app. 1, § 12.00©.

Here, when applying the PRT at steps two and three, the ALJ found Cooperman's history of depression is a "severe" impairment and that Cooperman has "moderate" limitations in concentration, persistence, and pace. (Tr. 21-22). When a claimant has a "severe" mental impairment at step two, but his impairment does not meet or equal a listed impairment at step three, the ALJ will then assess the claimant's mental RFC. *See* 20 C.F.R. §§ 404.1520a(d)(3), 404.1546(c). When determining Cooperman's RFC, the ALJ reasonable found that Cooperman's depression resulted

in a moderate impact on his ability to concentrate.[7] (Tr. 23).  The ALJ then properly asked the VE to assume that Cooperman's moderate depression had a moderate impact on his ability to concentrate.  (Tr. 56); *see Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (holding that an ALJ must account for any limitations identified in the PRT in any hypothetical question posed to a VE).

Cooperman contends the ALJ's hypothetical question to the VE somehow improperly placed a burden on the VE to interpret what the ALJ meant by "moderate." (Doc. 12 at 8).  This argument lacks merit.  First, because the ALJ determined Cooperman could perform his past relevant work, the burden remained on Cooperman at step four and the ALJ was not even required to call the VE to testify.  *See Brown v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287 (1987); 20 C.F.R. § 404.1520(a)(4)(v).  Moreover, the VE never indicated he did not understand what the ALJ meant when asking him to assume a moderate impact on Cooperman's ability to concentrate.  (Tr. 55-57).

---

[7] It appears the ALJ gave Cooperman the benefit of the doubt when finding his ability to concentrate was limited to any extent. On August 20, 2010, state agency psychiatrist Lee Blackmon, M.D., opined that Cooperman did not even have a medically determinable mental impairment. (Tr. 806-16). He noted the record showed Cooperman had not alleged any psychological problems, was not taking any medication for a mental impairment, and had denied any concentration problems. (Tr. 148, 166, 178, 818). The ALJ, noting it was questionable whether the record showed any ongoing symptoms from depression, assigned Dr. Blackmon's opinion partial weight "out of an abundance of caution and in full consideration of [Cooperman's] allegations." (Tr. 26).

Cooperman failed to carry his burden of proving disability, and substantial evidence supports the ALJ's decision that Cooperman is not disabled.[8]

## VI. Conclusion

Because the Commissioner's decision is based on substantial evidence and the ALJ applied proper legal standards, it is AFFIRMED and this action will be DISMISSED WITH PREJUDICE. A separate order will be entered.

DONE this 18th day of June, 2014.

                                                HARWELL G. DAVIS, III
                                                UNITED STATES MAGISTRATE JUDGE

---

[8] At the end of the argument section of his brief, Cooperman states that "[t]he comments at R. 206-208 are additionally resubmitted." (Doc. 12 at 9). This refers to a letter Cooperman sent to the Appeals Council regarding review of the ALJ's decision. (Tr. 206-08). The only error Cooperman attributes to the ALJ in the letter is a general statement that the ALJ did not consider all of Cooperman's impairments in combination and the affect they would have on his ability to work. (*Id.*). This contention is conclusory and presented with no supporting argument. Nevertheless, contrary to Cooperman's contention, the ALJ properly considered all of Cooperman's impairments in combination as required by 20 C.F.R. § 404.1523. (Tr. 23-26).